UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHARON HOLLINGSWORTH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 04-2209 (RMC) |
| JAMES C. DUFF,[1] | ) ) | |
| Director, Administrative Office of the U.S. Courts, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Plaintiff Sharon Hollingsworth developed sick-building syndrome while working as a computer programmer in the Thurgood Marshall Federal Judiciary Building. During a period of declining health surrounding this diagnosis, her employer, the Administrative Office of the U.S. Courts ("AOUSC"), permitted her to work from home, but ultimately eliminated her position and terminated her, claiming that any alternative positions would require her presence in the Marshall Building, which her health precluded. Ms. Hollingsworth filed an administrative complaint with the AOUSC, claiming that she was discriminated against on the basis of her disability. That complaint was resolved against her in a Final Agency Decision issued on December 21, 2004.

Ms. Hollingsworth does not appeal the adverse decision. Instead, she sues James C. Duff, Director of the AOUSC, under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* The AOUSC

---

[1] James C. Duff is substituted for his predecessor, Leonidas Ralph Mecham, as Director of the Administrative Office of the U.S. Courts, pursuant to Fed. R. Civ. P. 25(d)(1).

now moves to dismiss, asserting that the Court lacks subject matter jurisdiction because the AOUSC, as a judicial branch agency, is not within the purview of the Rehabilitation Act. The Court agrees and will grant the AOUSC's motion to dismiss.

## I. FACTUAL BACKGROUND

Ms. Hollingsworth began working at the AOUSC as a Computer Programmer Analyst in January 1990. Compl. ¶ 7. In November 1992, shortly after the AOUSC moved to the Marshall Building, she began suffering from headaches and other environmental allergies, and was ultimately diagnosed with sick-building syndrome. *Id.* at ¶¶ 8-14, 17, 22. In mid-1994, after a period of deteriorating health, Ms. Hollingsworth stopped working in the Marshall Building, but continued to work from home under a Flexible Workplace Agreement. *Id.* at ¶¶ 18, 21. In early 1996, after the AOUSC claimed that it could not reassign her due to her health limitations, Ms. Hollingsworth filed her first administrative complaint; that charge was settled with an agreement that permitted Ms. Hollingsworth to work from home on a long-term basis. *Id.* at ¶¶ 25-26. In early 2000, in response to AOUSC management's repeated requests for further medical documentation, Ms. Hollingsworth filed a second administrative complaint, which was also settled. *Id.* at ¶ 34.

In November 2002, the AOUSC notified Ms. Hollingsworth that her position would be abolished. *Id.* at ¶ 35. Despite attempts to reassign Ms. Hollingsworth to another position in the AOUSC — efforts that Ms. Hollingsworth describes as inadequate — she was not accepted for employment in any other section, *id.* at ¶ 36-42, and, on April 10, 2003, she was terminated, Answer at ¶ 45. Ms. Hollingsworth then filed a third administrative complaint alleging disability discrimination. Def.'s Mot. Ex. A. In a Final Agency Decision issued on December 21, 2004, the

AOUSC Director adopted the Administrative Judge's oral ruling that the AOUSC did not discriminate against Ms. Hollingsworth. *Id.*

That same day, Ms. Hollingsworth filed this action, which alleges a single count of discrimination and failure to accommodate under the Rehabilitation Act. The AOUSC's motion to dismiss for lack of subject matter jurisdiction, filed November 2, 2005, has been fully briefed and is now ripe for decision.

## II. LEGAL STANDARDS

The AOUSC moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. Generally, under Rule 12(b)(1), the Plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction. *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 30-31 (D.D.C. 2001).

## III. DISCUSSION

Ms. Hollingsworth's claim stands or falls on the assertion that AOUSC employees, like herself, fall within the scope of the Rehabilitation Act. The parties agree, as does the Court, that the Rehabilitation Act does not, on its face, extend to judicial branch employees. Pl.'s Opp'n at 6-7; Def.'s Reply at 2. Ms. Hollingsworth instead argues that the Administrative Office of the United

States Courts Personnel Act of 1990, Pub. L. 101-474, 104 Stat. 1097 (1990) ("AOUSC Personnel Act"), impliedly repealed and modified the Rehabilitation Act, extending its coverage to AOUSC employees. Pl.'s Opp'n at 6-7. She contends that because the AOUSC Personnel Act was intended to provide disability discrimination protections to AOUSC employees, and the Rehabilitation Act is the sole mechanism by which federal employees can pursue such claims in federal court, the AOUSC Personnel Act must have extended the protections of the Rehabilitation Act to AOUSC employees, else the statutes would irreconcilably conflict.

The Court finds, however, that the AOUSC Personnel Act did not amend the Rehabilitation Act to cover AOUSC employees, but created a separate — and complementary — administrative scheme with remedies similar to those available under the Rehabilitation Act. This administrative scheme, which Ms. Hollingsworth put to use, was her sole remedy, and this Court lacks subject matter jurisdiction over her independent Rehabilitation Act claim.

    **A. Statutory Background**

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may be discriminated against by certain federal agencies "solely by reason of his or her disability." 29 U.S.C. § 794(a); *see Davis v. Ashcroft*, 355 F. Supp. 2d 330, 353 (D.D.C. 2005). By its terms, the Rehabilitation Act applies only to "[e]ach department, agency, and instrumentality . . . in the executive branch and the Smithsonian Institution." 29 U.S.C. § 791(b). While Congress has extended rights under the Rehabilitation Act to certain "covered employees" in the legislative branch, *see* Congressional Accountability Act, 2 U.S.C. §§ 1301-1348; *cf. Collins v. James*, No. 04-

5428, 2005 U.S. App. LEXIS 26083, at *2-3 (D.C. Cir. Nov. 29, 2005) (holding the Rehabilitation Act inapplicable to the Government Printing Office, a unit of the legislative branch), the Rehabilitation Act does not cover judicial branch agencies.

This does not, however, leave judicial branch employees with complaints of disability discrimination without a remedy.  The AOUSC Personnel Act, which was enacted in 1990, mandates that the AOUSC establish a personnel system that "prohibit[s] discrimination on the basis of race, color, religion, sex, national origin, political affiliation, marital status, or handicapping condition."  AOUSC Personnel Act § 3(a)(9).  It directs the AOUSC to "promulgate regulations providing procedures for resolving complaints of discrimination by employees and applicants for employment."  *Id.*  Furthermore, it centralizes the administrative procedures available to AOUSC employees.  Section 3(g) of the AOUSC Personnel Act states that:

> Nothing in this Act shall be construed to abolish or diminish any right or remedy granted to the employees of the Administrative Office by any law prohibiting discrimination in Federal employment on the basis of race, color, religion, age, sex, national origin, political affiliation, marital status, or handicapping condition, except that, with respect to any such employees and applicants for employment, any authority granted under any such law to the Equal Employment Opportunity Commission, the Office of Personnel Management, the Merit Systems Protection Board, or any other agency in the executive branch, shall be exercised by the Administrative Office.

*Id.* § 3(g).

To implement this congressional mandate, the AOUSC established the Fair Employment Practices System ("FEPS"), an administrative scheme setting forth the AOUSC's employment policies and providing procedures for the resolution of discrimination claims.  *See* Def.'s Mot. Ex. C.  FEPS contains a multi-step administrative process for resolving discrimination

5

claims, beginning with counseling, mediation, and an independent investigation, and generally culminating with a hearing and an administrative decision. *Id.* In Ms. Hollingsworth's case, this process ended with an adverse ruling from an administrative judge, which the AOUSC Director adopted in a Final Agency Decision.

### B. The AOUSC Personnel Act Did Not Impliedly Repeal the Rehabilitation Act

In an effort to establish that the FEPS administrative scheme is not her sole avenue for relief, Ms. Hollingsworth argues that the AOUSC Personnel Act impliedly repealed and modified the Rehabilitation Act, extending its coverage to AOUSC employees. Repeals or amendments by implication are disfavored and will not be found unless congressional intent is clear and manifest. *See Rodriguez v. United States*, 480 U.S. 522, 524 (1987); *Ruckelhaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984); *Natural Res. Def. Council v. Hodel*, 865 F.2d 288, 318 (D.C. Cir. 1988). Congress is presumed to "legislate[] with knowledge of former related statutes," *United States v. Hsia*, 176 F.3d 517, 525 (D.C. Cir. 1999), and to "specifically address language on the statute books that it wishes to change," *United States v. Fausto*, 484 U.S. 419, 453 (1988). Implied amendments must therefore surmount a high bar, for if "Congress had meant to repeal any part of any previous statute, it could easily have done so." *Hagen v. Utah*, 510 U.S. 399, 416 (1994). Indeed, Ms. Hollingsworth acknowledges that this "stringent standard" requires that there be an "irreconcilable conflict between the two federal statutes at issue." Pl.'s Opp'n at 8 (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 468 (1982)).

There is no irreconcilable conflict here. To the contrary, the administrative scheme created by the AOUSC complements the Rehabilitation Act by providing a mechanism for AOUSC employees to redress disability discrimination claims that would otherwise go unresolved because

judicial branch employees are not covered by the Rehabilitation Act. Thus, the two statutes actually fit together "quite sensibly." *See Rodriguez*, 480 U.S. at 524. Moreover, had Congress wanted to extend the Rehabilitation Act to cover judicial employees, it might have done so in one of the nine times it has amended the statute since its passage in 1973.[2] Most notably, Congress has twice expanded the Rehabilitation Act's scope beyond the executive branch since the 1990 passage of the AOUSC Personnel Act. The Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. §§ 1301-1438, extended rights under the Rehabilitation Act to some legislative branch employees. *Collins*, 2005 U.S. App. LEXIS 26083, at *2. Three years later, Congress again enlarged its scope to include the Smithsonian Institution. Workforce Investment Act of 1998, Pub. L. No. 105-220, 112 Stat. 936 (1998); *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998). In neither event did Congress place the AOUSC within the ambit of the Rehabilitation Act.

Quite to the contrary, Congress, in passing the CAA, "initially considered extending the statute's coverage to employees of the judicial branch but, mindful of the importance of judicial autonomy, ultimately decided against such action." *Dotson v. Griesa*, 398 F.3d 156, 173 (2d Cir. 2005). Instead, it directed the Judicial Conference to prepare a report on the subject, which ultimately concluded that "in light of current judicial branch policies . . . legislation is neither necessary nor advisable in order to provide judicial branch employees with protections comparable

---

[2] Rehabilitation Act Amendments of 1974, Pub. L. 93-516, Title I, § 100, 88 Stat. 1617 (1974); Rehabilitation Act Extension of 1976, Pub. L. 94-230, § 1, 90 Stat. 211 (1976); Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub. L. 95-602, § 1, 92. Stat. 2955 (1978); Rehabilitation Amendments of 1984, Pub. L. 98-221, § 1, 98 Stat. 17 (1984); Rehabilitation Act Amendments of 1986, Pub. L. 99-506, § 1(a), 100 Stat. 1807 (1986); Rehabilitation Act Amendments of 1991, Pub. L. 102-52, § 1, 105 Stat. 260 (1991); Rehabilitation Act Amendments of 1992, Pub. L. 102-569, § 1(a), 106 Stat. 4344 (1992); Rehabilitation Act Amendments of 1993, Pub. L. 103-73, § 1, 107 Stat. 718 (1993); Rehabilitation Act Amendments of 1998, Pub. L. 105-220, Title IV, § 401, 112 Stat. 1092 (1998).

to those provided to legislative branch employees under the CAA." *Id.* at 175. This "extensive dialogue" between Congress and the federal courts "about the need to legislate remedies for judicial employment disputes" resulted in "Congress ultimately choosing not to enact any such legislation and the courts establishing even more detailed and multi-layered levels of administrative review." *Id*. at 176.

Ms. Hollingsworth has made use of the "judiciary's own comprehensive review procedures for adverse employment actions." *Id.* She filed an administrative complaint and elected[3] to have an immediate decision from an EEOC administrative judge according to the procedures laid

---

[3] A "pre-Act" employee such as Ms. Hollingsworth — that is, an employee who began working for the AOUSC prior to the enactment of the AOUSC Personnel Act — faces a procedural choice: she may (1) "have an immediate agency decision pursuant to the [Equal Employment Opportunity Commission ("EEOC")] process as set forth in 29 C.F.R. § 1614"; or (2) proceed under FEPS and thereby "waive in writing the right to the EEOC process (e.g., the right to file an appeal with the EEOC or to file a complaint in U.S. District Court) and . . . be bound by the final [AOUSC] decision." Def.'s Mot. Ex. C, FEPS § F.7.a.

While the Government asserts that Ms. Hollingsworth elected the former route, Def.'s Mot. at 6, Ms. Hollingsworth does not indicate one way or the other. Although the record is somewhat unclear on this point, it tends to confirm the Government's indication that the EEOC route was taken, as the Final Agency Decision explicitly adopted the oral ruling of an Administrative Judge, Def.'s Exh. A at 1, rather than that of a hearing officer. *Compare* 29 C.F.R. § 1614.109 (noting that EEOC hearings are conducted by an "administrative judge") *with* FEPS § F.8 (stating that FEPS complaints are reviewed by an "impartial hearing officer").

This leaves confusing the Government's further suggestion that the Final Agency Decision, issued by the AOUSC Director, was "final and may not be appealed or reviewed" pursuant to FEPS § F.17.c. Def.'s Mot. at 7. If Ms. Hollingsworth took the EEOC route, rather than continuing down the FEPS path, then it is difficult to see how § F.17.c, or the waiver of the rights to appeal to the EEOC or file a complaint in district court under FEPS § F.7.a, apply to her at all. Indeed, the Final Agency Decision indicates that she has precisely those appeal rights — including the right to file a civil action in district court pursuant to 29 C.F.R. § 1614.407. Def.'s Mot. Exh. A at 4.

The parties have not addressed this confusion, but it is no matter. The language in the Final Agency Decision regarding appeal rights appears to be boilerplate that, while perhaps applicable to other species of discrimination charges, is not tailored to complaints of disability discrimination. For the reasons explained in the text, regardless of the procedural path taken, the Court lacks jurisdiction over Rehabilitation Act claims of AOUSC employees. That the Final Agency Letter might be read to suggest otherwise does not alter the jurisdiction of the Court.

out in the FEPS scheme. Though Ms. Hollingsworth may be displeased with the rejection of her complaint at the administrative level, she has no recourse here. Given the lack of demonstrated intent to extend the Rehabilitation Act to judicial employees, the Court "cannot rewrite the[] statutes to create federal subject matter jurisdiction over [Plaintiff's] Rehabilitation Act claim." *Collins*, 2005 U.S. App. LEXIS 26083, at *2.

Ms. Hollingsworth's attempts to resist this conclusion are unpersuasive. She first argues that, as a pre-Act employee, *see supra* n.3, her right to sue in federal court is "grandfathered" by the AOUSC Personnel Act and FEPS guidelines. Pl.'s Opp'n at 8-9. Specifically, she notes that § 3(g) of the AOUSC Personnel Act provides that "[n]othing in this Act shall be construed to abolish or diminish any right or remedy granted to the employees of the Administrative Office by any law prohibiting discrimination in Federal employment." The FEPS guidelines reiterate this idea, stating that FEPS "does not alter or diminish the legal rights and remedies which were applicable to certain employees of the AO prior to the effective date of the [AOUSC] Personnel Act of 1990." FEPS § A. In view of these provisions, Ms. Hollingsworth contends that "[a]rguably the most substantial legal right possessed by . . . grandfathered pre-[Act] employee[s] is that they, unlike post-[Act] employees, have the right to pursue their discrimination complaints against [the] AOUSC in federal district court." Pl.'s Opp'n at 9. Unless the AOUSC Personnel Act impliedly amended the Rehabilitation Act, she urges, these grandfathered rights would be meaningless. *Id.*

The flaw in this argument is that the Rehabilitation Act did not, either before or after the passage of the AOUSC Personnel Act, provide judicial branch employees with the right to file a disability discrimination complaint in federal court. While it is true that the AOUSC Personnel Act did not diminish the rights of pre-Act employees, it did not somehow give them a new right —

that is, to file a Rehabilitation Act claim in federal court — that they did not have before its enactment in 1990.

Ms. Hollingsworth next argues that 29 C.F.R. § 1614.103, which she concedes "specifically notes that the Rehabilitation Act is not available to the judicial branch," is an errant regulation that is invalid for being inconsistent with the Rehabilitation Act. Pl.'s Opp'n at 11.[4] She contends that this inconsistency is based on the drafters' failure to recognize the AOUSC Personnel Act's implicit repeal of the Rehabilitation Act. *Id.* The regulation, which details the classes of employment discrimination complaints that are governed by the EEOC process, explicitly includes "[a]ll units of the judicial branch of the Federal government having competitive service, except for complaints under the Rehabilitation Act." 29 C.F.R. § 1614.103(b)(4). Far from being inconsistent with the Rehabilitation Act and AOUSC Personnel Act, this regulation is fully consistent with Congress's intent to exclude judicial branch employees from the Rehabilitation Act.

Finally, Ms. Hollingsworth briefly suggests that § G.2.b.3 of the FEPS guidelines acknowledges that the Rehabilitation Act is available to AOUSC employees as a mechanism to pursue disability discrimination claims in federal court. *See* Pl.'s Opp'n at 11. That section, however, simply sets forth the remedies available under the FEPS administrative scheme — which, for discrimination based on disability, include reasonable accommodation, back pay and interest, and attorneys' fees. FEPS § G.2.b.3. Although these remedies are consistent with those available under the Rehabilitation Act, the FEPS guidelines do not purport to enable aggrieved employees to bring

---

[4] Although Ms. Hollingsworth cites 29 C.F.R. § 1614.104 in her opposition, Pl.'s Opp'n at 11, it is actually 29 C.F.R. § 1614.103(b)(4) that discusses the inapplicability of the Rehabilitation Act to the judicial branch.

a civil action, outside of the administrative scheme, to attain those remedies. This framework is, again, entirely consistent with the Rehabilitation Act and the AOUSC Personnel Act, as it provides a mechanism for the redress of disability discrimination claims that would otherwise be unavailable to judicial branch employees under the Rehabilitation Act.

### IV. CONCLUSION

The AOUSC Personnel Act and its implementing guidelines do not impliedly amend the Rehabilitation Act to cover AOUSC employees. Ms. Hollingsworth has made full use of the administrative procedures available to her — those provided by the AOUSC. Though she is unhappy with her result, the Court is powerless to entertain a claim under the Rehabilitation Act and must dismiss the action. A memorializing order accompanies this memorandum opinion.


Date: August 2, 2006                                /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge